UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
_____ DIVISION

Mr. James Smalley )
)
_____ )
)
)
_____ )
(Enter above the full name of the )
Plaintiff(s) in this action. Include prison )
registration number(s).) )
)
)
v. )
) Case No. _____
Officer John W. Stevens DSN 07286 ) (To be assigned by Clerk)
)
Officer Kelly M. McInnis DSN 03380 )
)
Four John Does supervisory Officials )
)
_____ )
)
)
_____ )
(Enter above the full name of ALL Defend- )
ant(s) in this action. Fed. R. Civ. P. 10(a) )
requires that the caption of the complaint )
include the names of **all** the parties. Merely )
listing one party and "et al." is insufficient. )
Please attach additional sheets if necessary. )

**PRISONER CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983**

I.  PLACE OF PRESENT CONFINEMENT:

   Jefferson City Correctional Center

II. PREVIOUS CIVIL ACTIONS:

   A.  Have you brought any other civil actions in state or federal court dealing with the same facts involved in this action or otherwise relating to your confinement?

      YES [✓]          NO [ ]

B. If your answer to "A" is YES, describe the action(s) in the space below. If there is more than one action, you must describe the additional action(s) on a separate piece of paper, using the same format as below.

1. Parties to previous civil action:

   Plaintiff(s): _____

   Defendant(s): _____

2. Court where filed: _____

3. Docket or case number: _____

4. Name of Judge: _____

5. Basic claim made: _____

6. Present disposition (Is the case still pending? Is it closed? If closed, was it appealed?):

   *Pre-trial scheduling*

III. GRIEVANCE PROCEDURES:

A. Is there a prisoner grievance procedure at the institution in which you are incarcerated?

   YES [✓]          NO [ ] n/a

B. Have you presented this grievance system the facts which are at issue in this complaint?

   YES [ ]          NO [✓] n/a

C. If your answer to "B" is YES, what steps did you take: _This suit is brought against two St. Louis City Police officers, and their supervisory._

D. If your answer to "B" is NO, explain why you have not used the grievance system: _N/A_

IV. PARTIES TO THIS ACTION:

A. Plaintiff(s)

1. Name of Plaintiff: _Mr. James Smalley_
2. Plaintiff's address: _8200 No More Victims Road_
3. Registration number: _178598_
4. Additional Plaintiff(s) and address(es): _N/A_

B. Defendant(s)

1. Name of Defendant: _Police Officer John W. Stevens DSN 07286_
2. Defendant's address: _Unknown_
3. Defendant's employer and job title: _Police Officer for the St. Louis City Police Department_
4. Additional Defendant(s) and address(es): _Kelly M. McInnis, St. Louis City Police Officer, for the St. Louis City Police Department_

V. COUNSEL

   A. Do you have an attorney to represent you in this action?

   YES [ ]   NO [✓]

   B. If your answer to "A" is NO, have you made an effort to contact an attorney to represent you in this matter?

   YES [ ]   NO [✓]

   C. If your answer to "B" is YES, state the name(s) and address(es) of the attorneys you contacted and the results of those efforts:

   _____

   _____

   _____

   D. If your answer to "B" is NO, explain why you have not made such efforts:

   No Monies

   _____

   E. Have you previously been represented by counsel in a civil action in this Court?

   YES [ ]   NO [✓]

   F. If your answer to "E" is YES, state the attorney's name and address:

   _____

   _____

-4-

<u>Complaint</u>

Comes now, plaintiff James Smalley, # reg.178598, pro-se and in forma pauperis, in the above caption cause and for his cause, a state prisoner, for damages and relief under 42 U.S.C. § 1983 alleging Unlawful Search, Seizures, Detention, tacit authorization of Supervisory Officials, and for a violation of Statute 554.193.(2), as guaranteed by the Fourth (4), and Fourteenth (14), Amendments to the United States Constitution as well as the Due Process Clauses under the Fourteenth Amendment.

Complaint

Plaintiff Alleges:

1. On February 26, '07, at approx: 11:26 am. plaintiff was in the are of Loa, and Margaretta, where he stopped and picked up an old acquaintance one Percy Sutherland, plaintiff and Mr. Sutherland, had lived in this neighborhood for over forty one (41) years. Upon picking Mr. Sutherland, up, and him getting in the vehicle. Plaintiff had started to pull off. When another old acquaintance call out to the plaintiff. One Miss Carolyn Howard, and again Miss. Howard, was another very old acquaintance from this neighborhood. Upon Miss. Howard, reaching plaintiff's vehicle she asked plaintiff if he could take her to the filling station. Plaintiff told her yes to get in. It was at that time Miss Howard, got in the back seat directly behind Mr. Sutherland, whom was in the front passenger seat. Plaintiff then proceeded west bound on Margaretta, as Margaretta is a one way heading west.

2. While driving west bound on Margaretta, it came to Mr. Sutherland, the purpose for which he'd been waiting at Loa, and Margaretta, he'd been waiting for his girlfriend. He then told plaintiff that he would need to wait for his girlfriend. As plaintiff didn't want to back all the way back up Margaretta, again this was a one way street. What plaintiff did at that time, he pulled his vehicle to the left curb and parked in between a car and a van, with the van being in front of his vehicle. After parking plaintiff and Mr. Sutherland, agreed that plaintiff would wait there for Mr. Sutherland, and his girlfriend. Mr. Sutherland then emerged from the vehicle, and walk back east on Margaretta, to about the same spot where plaintiff had picked both passenger up from. Plaintiff didn't see Mr. Sutherland again until he was commanded out of his vehicle by officers' McGinnis, and Stevens, officer McGinnis, on deposition taken and at trial in this cause admitted that he and officer Stevens, commanded plaintiff out of his vehicle before it was found that plaintiff had did anything wrong

3. The next thing that happen, about forty five (45), seconds after Mr. Sutherland, emerged from plaintiff's vehicle officer Kelly McGinnis, and John Stevens, pulled their vehicle directly along side of (Parallel), to plaintiff's vehicle stopping their vehicle and shining a very bright light (Spot Light) through the front passenger side window, directly in plaintiff face who was in the drivers seat. Officer McGinnis, while sitting in this vehicle with this very bright spot light in plaintiff face. He then asked plaintiff what

(1)

he was doing there. Plaintiff's response, waiting for a friend. After stating this to this officer, this officer in turn, turned off his over head emergency lights, and removed this spot light from plaintiff face. He then proceeded to pull off, when all of a sudden this officer abruptly stopped and turned back on their over head emergency lights. He then backed back parallel to plaintiff's vehicle, again blocking plaintiff in this parking space. It was at that time both officers got out of this vehicle and came around to the drivers side window of plaintiff's vehicle. Where both officer McGinnis, and Stevens, commanded plaintiff out of his vehicle. (Compliance Was Required) As Officers' Stevens, and McGinnis, walked around plaintiffs vehicle. Plaintiff could see both these officer approach through his rear view mirror that was located on the outer door of his vehicle. What plaintiff saw officer Stevens, do upon his approach, was unbutton his service weapon.

4. After plaintiff was commanded out of his vehicle and handcuffed by officer Stevens, he was then taken to the rear drivers side of his vehicle by this officer. It was then officer McGinnis, asked plaintiff for his information. Which plaintiff provided him with. Officer McGinnis, then went back to the front window of the drivers side door and asked Miss. Howard, who was in the back right side seat of this vehicle. After procuring Miss. Howards, information he went back to their and ran a Regis, check on both plaintiff and Miss. Howard. Officer Steven, then performed his first strip search right there on the side on the road on the plaintiff. Where this officer unbutton plaintiff's belt, pants and then pulled them down pass his genitals. He then pulled the elastic to plaintiff's underwear out, so as to permit inspection of plaintiff's genitials and buttox. He shined his flashlight on plaintiff genitials buttox. This officer then shook plaintiff pants several times at the waist as if to shake something out of them

5. About eight (8), to ten (10), minutes after plaintiff was strip searched by officer Stevens, officer McGinnis, emerged from their vehicle and walked to where officer Stevens, and plaintiff were standing at the rear drivers side of plaintiff vehicle. He then told plaintiff that he had warrants that he was under arrest. It was at that time officer McGinnis, walked back to the drivers door of plaintiff's vehicle. He then crawled into the front compartment and began searching plaintiff vehicle. All the while Miss. Howard, was still in the back seat of the vehicle. While standing at the rear of this vehicle with officer Stevens, plaintiff asked officer McGinnis, as he was searching his vehicle was he going to tow his vehicle. This officer told him no he would not be towing his vehicle. Plaintiff then asked this officer could Miss. Howard, lock his doors and take the face off his radio. Officer McGinnis, told plaintiff that he would be locking his doors, but Miss Howard, could take the face off his radio when he finished searching the vehicle. Not long after this officer McGinnis, told Miss. Howard, she could get out of the vehicle. Howard, then got out of the vehicle and walked back to the street side of the vehicle opposit of plaintiff and officer Stevens, and

(2)

stood. About seven (7), or eight (8), minutes later officer McGinnis, emerged from the vehicle and told Ms. Howard, she could remove the face from this radio. It was at that time Miss Howard, got in the vehicle and removed the face from this radio. Officer McGinnis, then told her she could leave; which she did. This officer then the doors on plaintiff vehicle. By that time officer Stevens, had placed plaintiff in the right rear passenger seat of their vehicle directly behind where he was sitting. Plaintiff was never mirandanized when officer McGinnis, got back in the patrol car he dial 411, in his phone and showed it to plaintiff in the back seat.

6. Plaintiff was then conveyed to the North Patrol Division, for booking. Upon **plaintiff**'s arrival at this station he was taken to the booking desk by officer Stevens, where this officer told him to take everything out of his pocket, and place it in a basket that was sitting on this booking desk. He was then told to remove his belt and shoe strings; which he did. Plaintiff was never searched any further at this booking desk. He was then told by this officer to turn around and follow him to back room directly behind where him and plaintiff were standing at this desk. Plaintiff did exactly what he was told. Upon entering this room with this officer plaintiff was told to unbutton his belt and to unzip his pants. He then looked down in plaintiff's pants and underwear. He then moved plaintiff's pants all around as if to shake something out of them. It was at about this time officer McGinnis, came to the door of this room and finished watching his trainee's search of plaintiff. With the shaking of plaintiff's pants by officer Stevens, not being good enough this officer told plaintiff to take off his clothes (To Strip). After plaintiff had gotten naked; this officer took plaintiff's clothes and searched them. After searching plaintiff clothes, this officer told plaintiff to squat and cough. Not one thing did this remove from plaintiff's clothing.

7. After the search plaintiff was told he got dressed. As plaintiff and this officer exited the room, officer Stevens, and McGinnis, walked down a hallway and conferred with each other in private. Plaintiff couldn't see what these two officers' were doing when they went down this hallway. After this, officer Stevens, exited this hallway back to where plaintiff was. He then told him to follow him. Where plaintiff was then taken to a dry cell. There where no fixtures in this cell. There was a video camera mounted in the bubble area right across from this cell over this cell. Pointing directly in this cell. Not long after this plaintiff was told that he was being charged with trafficking in the second degree. Defendants followed none of the rules or regulations as prescribed in Statute § 554.193.(2), while performing these unlawful strip searches, while on the street in the 4600 block of Marquette, or at

(2)

the North Patrol Station on February 26, 27, 2007.

8. This suit is being brought against all supervisory officials for their tacit authorization of the unlawful acts perpetrated against on the night of February 26, 27, 2007.

Jurisdiction And Parties:

1. This is an action for money damages to redress the deprivation by defendants of the rights secured to plaintiff under the Constitution and laws of the United States of America and the State of Missouri.

2. The defendants unreasonably seized the person of the plaintiff and subjected him to degrading and humiliating strip searches and without warrant and without probable cause in violation of the Fourth (4), Fourteenth (14), and Statute 554.193.(2).

3. This court has subject matter jurisdiction of the claims asserted in this complaint under 28 U.S.C. §§ 1331, 1343 (3).

4. At all times mentioned herein, plaintiff was and still is a citizen of the United States of America.

5. At all times mentioned here, the State of Missouri was and still is one of the States comprising the United States of America and was and still is the employer of personnel named as defendants.

6. At all times mentioned here, defendants Police Officer John Stevens, Police Officer Kelly McGinnis, Supervisory Officials John Doe #1, Supervisory Officials John Doe #2, Supervisory Official John Doe #3, and Supervisory Official John Doe #4. Plaintiff at this preserves the right to add these John Doe officials at such time these officials names are made available to plaintiff. All defendants as herein described were and still are officers in the St. Louis City Department, to the best of plaintiff's knowledge, and were acting in their individual and official capacity as Police Officers.

7. At all times mentioned in this complaint, the defendants were acting under color of law, that is, under color of the constitution, statutes, laws, rules, regulations, customs, and usages of the State of Missouri.

8. At all times mentioned in this complaint, the defendants and each of them, separately and in concert with each other, engaged in acts and omissions that constituted deprivations of the rights, privileges, and immunities of the plaintiff, and while these acts were carried out under color of law, they had no justification or excuse in law, and were instead gratuitous, illegal, improper, and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

9. At all times mentioned in this complaint, each defendant had the power and the duty to restrain the other and prevent them from violating the law and rights of the plaintiff, but that each of the defendants failed and refused to perform that duty, failed, and refused to restrain the other defendants, and became a party to the injuries inflicted on the plaintiff.
[4]

10. On February 26, 2007, at approx: 11:30 am. while plaintiff was lawfully parked in the 4600 block of Margaretta, in the City of St. Louis Missouri. Police officers Kelly McKinnis, and John Stevens, pulled directly along side, (Parallel), to plaintiff's vehicle blocking him in his parking space, with their over head emergency lights on, and shining a very bright spot light in the plaintiff's face as he sat in his vehicle. Plaintiff had done nothing wrong. Both officers' got out of their vehicle and approached the drivers side door of plaintiff vehicle, and commanded him out of his vehicle without him having done anything wrong, both officers, having already addmitted this fact upon deposition and at trial in this cause. Plaintiff at the time was legally parked at the curb.

11. The defendants had no legal basis for stopping plaintiff, and they under the guise/pretense of someone exiting plaintiff car and ran, and or walked off from plaintiff's vehicle (officer Stevens, testified on deposition that a man walked off), at trial he testified that a man had run off. The vehicle was legally parked at the curb.

    a. This accusation constituted a pretext for stopping plaintiff
    b. The defendants then fabricated the false story, and evidence of someone running away from plaintiff's vehicle
    c. The true purpose of stopping the plaintiff was to search Mr. Smalley, person, vehicle and to go on a fishing expedition, and to harass.

12. Following the stop an interrogation, the defendants searched thoughly the person, vehicle, and effects of the plaintiff. These searches failed to produce any contraband.

13. The defendants then, with each other's active approval and while on the side of the road at the herein described location, conducted a strip search of the plaintiff, in public causing serious emotional injury to the plaintiff. Plaintiff will state for the very record that officer McKinnis, was in the vehicle during officer Stevens, strip search of the plaintiff on the street at that location.

14. Defendant officer John Stevens, upon conveyance of plaintiff to the station performed another strip search on the person of Mr. Smalley, where this officer made the plaintiff strip nude in a back office room of this station. and although this search produce no contraband. Officer Steven, fabricated evidence and produced drugs and submitted this false evidence as evidence allegedly found on the plaintiff person. As a result of the malicious acts, actions of officer Stevens, caused and is still causing serious emotional injury to the plaintiff to date.

All of these searches were conducted without a warrant and without probable cause.

    a. No reasonable basis existed for the actions taken against the plaintiff.
    b. No exigent circumstances existed to justify the failure to obtain warrants prior to conducting the searches.

16. At no time was any defendants able to find any legal basis for filing any charges against the plaintiff other than those fabricated against plaintiff after plaintiff was taken to the station. Plaintiff was found to have outstanding warrants only after the illegal search and seizure.

17. The searches of the plaintiff were unreasonable, intrusive, and intended to harass and harm the plaintiff.

18. The personal searches, strip searches conducted of plaintiff and illegal detention of the plaintiff by the defendants constituted unreasonable and excessive force by the police officers.

19. Solely as a result of these actions, plaintiff was:

    a. Deprived of his liberty without Due Process of Law, and his freedom for the last five (5) years of his life, and will be for another ten (10) years of his life, until and unless plaintiff gets a reversal in his case.
    b. Plaintiff suffered severe emotional trauma and injury, was subjected to great fear and terror when officer Stevens, unbutton his service weapon on the night in question. He was also subjected to the personal humiliation and degradation, of those unlawful strip searches.
    c. Has continued to suffer from mental and emotional distress as a result of the unlawful conduct of the defendants, and
    d. Has been caused to fear repetition of the unlawful conduct by the defendants or by other police officers, and correctional staff.

20. Each of the defendants, jointly and severally, acted maliciously, willfully, and wantonly, and outside the scope their jurisdiction, although under color of law, and violated rights of plaintiff:

    a. To be free from unreasonable search and seizure;
    b. To be free from warrantless search and seizure;
    c. To be free from search and seizure with probable cause;
    d. To be free from excessive force;
    e. To be free from intentional infliction of great emotional distress;
    f. To be free from negligence in the performance of police duties;
    g. To be free from summary punishment without trial; and
    h. To due process of law.

21. All of these rights are accrued to the plaintiff by the provisions of the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and by 42 U.S.C. §§ 1983, 1988, and statute 554.193.(a), R.S.M.O.

22. As a result of defendants' conduct, plaintiff has suffered damages and injury.

Second Claim For Relief

23. Plaintiff repeats and reiterates each and every allegation contained in the paragraphs of this complaint designated "1" through "22" inclusive with the same force and effect as though each were fully set forth at length here.

24. The defendants intentionally and for the purpose of causing severe mental distress conducted themselves towards the plaintiff in a manner so outrageous and shocking that it exceeded all reasonable bounds of decency.

25. The defendants recklessly conducted themselves towards the plaintiff in a manner so outrageous and shocking that it exceeded all bounds of decency.

26. Solely as a result of the defendants' conduct, plaintiff has suffered damages and injury.

Third Claim For Relief

27. Plaintiff repeats and reiterates each and every allegation contained in the paragraphs of this complaint designated "1" through "26" inclusive, with the same force and effect as though each were fully set forth at length here.

28. As for all John Does, officials, tacit authorization is sufficient where each should have prevented their subordinate officers' violations of the plaintiff's constitutional rights, and are therefore liable for their acts, and on omission of violating his, and their failure to train and supervise their subordinates. A reasonable person in the the supervisor's position would have known that his conduct infringed the constitutional rights of plaintiff, and his conduct was causally related to the constitutional violation committed by his subordinate, and the failure to prevent these violations amounted to deliberate indifference, where defendants failed and/or refused to restrain the other defendants, and became a party to the injuries inflicted on the plaintiff.

29. Solely as a result of the defendants' conduct, plaintiff has suffered damage and injury.

Prayer

Wherefore, plaintiff prays that the court grant the following relief:

A. Compensatory damages in the following amount:
 1. 250,000 from each defendant
B. Punitive damages in the amount of:
 1. 350,000 from each defendant
C. Cost of suit;
D. Reasonable attorney's fees; and
E. All other relief that is just and proper.

<u>Certificate of Service</u>

Mr. James Smalley #178598 pro-se
Litigant

Mr. James Smalley #reg 178598
Jefferson City Correctional Center
8200 No More Victims Road
Jefferson City Missouri 65101

This is to certify that an original and two (2) copies of the foregoing U.S.C. § 1983.
Civil Rights Complaint was mailed this <u>26</u> day of <u>Jan</u> 2012 to:

Clerk of The United States District Court, Eastern District of Missouri
Mr. James G. Woodward

James Smalley #178598
Jefferson City City Correctional Center
8200 No More Victims Road
Jefferson City Missouri 65101

(8)

VII. **RELIEF**

State briefly and exactly what you want the Court to do for you. Do not make legal arguments. (Note: If you are a **state** prisoner and you seek from this Court relief that affects the length or duration of your imprisonment, your case **must** be filed on a § 2254 form.)

See Attached Pages 1 through 8

VIII. **MONEY DAMAGES:**

A) Do you claim either actual or punitive monetary damages for the acts alleged in this complaint?

YES ☑    NO ☐

B) If your answer to "A" is YES, state below the amount claimed and the reason or reasons you believe you are entitled to recover such money damages:

Please see attached page seven (7), this complaint.

IX. Do you claim that the wrongs alleged in the complaint are continuing to occur at the present time?

YES [✓]    NO [ ]

Mr. James Smalley

_____          1-26-12
Signature of attorney or pro se Plaintiff(s)          Date

-6-